UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:11-CV-23036 - FAM

FILED by SAS D.C.
NOV 30 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - MIAMI

AF HOLDINGS, LLC.

Plaintiff

vs

**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, MOTION TO BE SEVERED FROM THE CASE, AND MOTION TO DISMISS COMPLAINT BY JOHN DOE WITH IP ADDRESS 71.122.251.152 PRO - SE**

JOHN DOE 1-162

Defendants

_______________________________/

COMES NOW JOHN DOE with IP Address 71.122.251.152 pro se, and hereby files this combined Motion To Quash, Motion for Protective Order, Motion to Be Severed From the Case, and Motion to Dismiss Complaint. John Doe hereby first moves this honorable Court to Dismiss/Quash the Subpoena directed to the ISP Carrier, VERIZON and second for a Protective Order pursuant to Local Rule 26(h)(3) limiting the disclosures by the ISP pending further review and argument and (third) moves to be Severed from the Case, (fourth) moves to dismiss the complaint For (1) for lack of jurisdiction over the person, (2) improper venue, (3) insufficiency of process, (4) insufficiency of service of process, (5) failure to state a cause of action and (6) failure to join indispensible parties and states as follows:

1. It is undisputed that I reside in Tampa, Florida and I have no contact with Dade County Florida.

2. It is undisputed that my ISP carrier sent a letter to my home address informing me that they had received a Subpoena seeking my name and address and other information from the Miami Attorney named in the Subpoena.

3. I have not been served with any complaint.

4. The object of the lawsuit is apparently to get my name and address so that the Plaintiff can harass and extort money from me ($3400.00 according to Mark at the phone # on the letter I got from Verizon) for allegedly violating their client's copyright to a movie that I did not download. I have no idea what bit torrents are or how to go about downloading movies such as these from the internet.

5. Since receiving said letter, I have discovered there have been a number of similar lawsuits filed across the country by various copyright holders sending out subpoenas against over 200,000 different "John Does." The plaintiff in this case, AF HOLDINGS LLC. has been making serial filings in other jurisdictions such as the AF HOLDINGS LLC v. JOHN DOES 1-20 in the Western District of Kentucky on 9/1/11, as well. Many Federal Judges who have presided over these "ill considered" lawsuits see these cases for what they are, nothing but frivolous nuisance suits.

6. AF HOLDINGS LLC has also previously filed nearly identical BitTorrent cases In the Northern District of California where the Motion for Early discovery was denied:

> A Plaintiff in a BitTorrent filing sharing copyright case sought early discovery to identify 96 Doe Defendants. The Plaintiff moved to subpoena the Doe Defendants' internet service providers ("ISPs") to identify each person associated with the IP address. *AF Holdings LLC v. Doe,* 2011 U.S. Dist. LEXIS 109816, 2-3 (N.D. Cal. Sept. 27, 2011).
>
> The Plaintiff specifically requested leave to subpoena the ISP's to disclose the "name, address, telephone number, and email address for each Defendant's IP address." *AF Holdings LLC,* at *3.
>
> Good cause is required for a court to allow early discovery prior to a Rule 26(f) meet and confer. *AF Holdings LLC,* at *3, citing *Semitool, Inc. v. Tokyo Electron American, Inc.,* 208 F.R.D. 273, 275 (N.D. Cal. 2002). Moreover, good cause may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*
>
> A key test is whether the early discovery is "very likely" to identify doe defendants. *AF Holdings LLC,* at *4-5.

The Court denied motion for early discovery, holding that the early discovery was not likely to identify the Doe Defendants. *AF Holdings LLC,* at *4-5.

7. Just as in the Northern District of California AF HOLDINGS LLC case, the granting of early discovery in this case will not lead to identification of the Doe Defendants for the same reason that the California Court found:

> Citing an earlier case with the same Plaintiff and attorney, the Court noted a prior court allowed early discovery on ISP addresses, only to have the Plaintiff return to Court stating additional discovery was needed, including "an inspection of the subscriber's electronically stored information and tangible things, including each of the subscriber's computer and the computers of those sharing his internet network." *AF Holdings LLC,* at *6.
>
> As was conceded in the prior case:
>
> *[The ISP discovery] does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another member of his household, of any number of other individuals who had direct access to Subscribers network.*
>
> *AF Holdings LLC,* at *6.
>
> The Plaintiff stated they would need the following discovery in the prior case:
>
> *Inspection of the identified subscriber's computer;*
>
> *[Inspection] all of those computers that subscriber has reasonable control over/access to, for the limited purpose of discovering who accessed the BitTorrent protocol.*
>
> *AF Holdings LLC,* at *6-7.
>
> This protocol might take two, perhaps three, subpoenas in all to identify a Doe Defendant. *AF Holdings LLC,* at *7.
>
> The Court denied without prejudice the early discovery in the current case, since the facts were nearly identical to the prior case, and that the ISP discovery would not identify the Doe Defendants. *AF Holdings LLC,* at *7-8.

8. The one common thing about all these cases is that statistically only about .1% (less than 200 John Does) have actually had any lawsuits filed against them for the alleged infringement once their identities have been disclosed to the Copyright holder's attorneys.

The attorney in Virginia who drew the Ire of Judge Gibney who entered a Rule to Show

Cause why Rule 11 Sanctions should not be imposed would dismiss any John Doe who filed a Motion to Quash or to be Severed from the Case just to avoid the actual cost of the litigation and having to have any hearings and actual decisions on the merits. The same course of conduct will most likely be engaged in by the attorney in this case as well since it appears to be the standard business model that they are operating under.

9. Judge Gibney went on to state:

> "This course of conduct indicates that the Plaintiff's have the offices of the Court as an inexpensive means to gain the Doe Defendant's personal information and coerce payment from them"… "The plaintiff's seemingly have no interest in actually litigating the cases but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does."

10. This clearly is abuse of the legal system by attorneys such as Mr. Rubin, who are taking advantage of mass litigating tactics to round up people whose IP addresses showed up in bit torrent swarms and then engaging in extortion tactics. It is an improper purpose for the suit and the joinder of unrelated defendants is not warranted by existing law or a non-frivolous extension of existing law.

11. The Attorneys for the copyright holders know that they do not have sufficient evidence to pursue these lawsuits and thus they resort to extortion tactics demanding money ($3400 in this case) to settle under threat of potential civil damages of over $150,000.00.

12. Interestingly in the demand letters that the copyright holder's attorney typically send out, they threaten to bring "spoliation of evidence" counts against any John Doe who removes any of their torrent files from the shared folder of the computer without first settling. This would seemingly result in continued copyright violations by the same John Doe. It truly makes one wonder just what the purpose of this language in the demand letters is, for it seems the Plaintiff does not care that his copyrighted material would

continue to be available for download by other infringers – perhaps that is indeed just what they want, and is tantamount to entrapment since they are requiring the discovered infringer to continue to seed the file if he doesn't settle so they can possibly round up even more infringers. Its much more lucrative to extort thousands of dollars from an alleged infringer than it is to sell the movie for $19.95 or whatever they charge for it.

13. The reason the attorneys do not have a case against 162 John Does in one filing in the first place is that it is a misjoinder of unrelated parties. The Plaintiff Raw Films in the Bit Torrent downloading case in Virginia has conceded that the Does "*may not have been physically present in the swarm on the exact same date and time*." So under existing case law, as well as any non-frivolous extension thereof there is no basis to join unrelated parties in the wrong courts other than to avoid paying the appropriate filing fees in the correct courts where the defendant's reside.

14. A cursory review of the docket entries for Miami Dade Circuit Court in fact reveals that Mr. Rubin contemporaneously with filing the instant action, has filed other lawsuits in Dade Circuit Court just as his fellow copyright attorney colleague Mr. M. Keith Lipscomb, Esq. has been doing since March 2011. The pattern and practice of Mr. Lipscomb and Mr. Rubin is the same as other copyright attorneys in other Jurisdictions, such as Mr. O'Brian who incurred the wrath of Judge Gibney – File the Lawsuit, get the discovery order, mail the subpoena, shakedown the targeted infringers for settlements, not have any hearings on the merits of any Motions to Quash etc, dismiss the case before any negative precedent is set that might block future serial filings (abuses of the legal system). Rinse and Repeat.

| Case Style Information<br>Case Number / Local / State / Consolidated | JSECT | Party 1 Name<br>Party 2 Name | Party 1 Code | Case Type | Filing Date | Bar Code | Disp Date | Disp Code |
|---|---|---|---|---|---|---|---|---|
| [illegible] | | | | | | | | |
| 2011-[illegible]-CA-01<br>[illegible]<br>N/A | 15 | PATRICK COLLINS INC<br>DOES JOHN | [illegible] | [illegible] | [illegible] | [illegible] | | |
| PATRICK COLLINS INC vs DOES JOHN [illegible] | | | | | | | | |
| 2011-12845-CA-01<br>13-2011-CA-012845-0000-01<br>N/A | 06 | PATRICK COLLINS INC<br>DOES JOHN (1-561) | PLL01 | 133 | 5/3/2011 | [illegible] | | |
| PATRICK COLLINS INC vs DOE JOHN | | | | | | | | |
| 2011-18746-CA-01<br>[illegible]<br>N/A | 27 | PATRICK COLLINS INC<br>DOE JOHN | PLL01 | 127 | 5/17/2011 | [illegible] | | |
| PATRICK COLLINS INC [illegible] vs DOES JOHN [illegible] | | | | | | | | |
| 2011-23734-CA-01<br>[illegible]<br>N/A | 15 | PATRICK COLLINS INC [illegible]<br>DOES JOHN [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | | |
| PATRICK COLLINS INC vs DOES JOHN | | | | | | | | |
| [illegible]<br>[illegible]<br>N/A | [illegible] | PATRICK COLLINS INC<br>DOES JOHN | [illegible] | [illegible] | [illegible] | [illegible] | | |

15.

Screen grab of the 5 pending or closed Patrick Collins cases in Dade Circuit Court.

16. The Attorneys in this case should be sanctioned under Rule 11 for knowingly bringing baseless lawsuits against innocent parties because they know that there are any number of reasons why a person's IP address can show up in a bit torrent stream while they have no knowledge of the actual downloading going on including unsecured wireless routers being used by unknown third parties, or secured routers being hacked by criminals who do not have permission to access the internet through the router, there could be viruses on their computers which enable them to be remotely controlled by outside persons etc. which is most likely what happened to me since I did not download any movies from the internet. Mr. Rubin should be aware of the rulings in the other AF HOLDINGS LLC Cases where the attorneys sought additional subpoenas trying to identify all wireless computers on a John Doe's wi fi network once they obtained the name and address. The pattern is to try to use the Court's subpoena power to go on fishing expeditions for the real culprit if and when they get the IP address holder's name and address and that party has no knowledge of the infringing activity.

17. If this Court does not quash the subpoena attached hereto directed to my ISP carrier, or sever me from the case, it is probably the last chance that I will have to any kind of

meaningful justice since I will otherwise have to face the "hobson's choice" of either paying the copyright attorneys off or paying an attorney the same amount of money to defend myself from the frivolous lawsuit being filed/contemplated by the Plaintiff. The US District Court for the Southern District of Florida should not enable and encourage these types of abuses of the legal system where they prejudice residents and non-residents alike, who must spend hours learning what is going on in these cases in order to mount a defense before the deadline passes. If I am forced into settling to avoid incurring legal fees that would be a travesty of justice and amounts to federally sanctioned extortion of innocent victims swept up in these dragnet lawsuits.

18. Even though I am not an attorney and have no experience with copyright lawsuits, I am an MD and can recognize a "fishing expedition" when I see it. I have nothing to do with the other "John Doe" defendants who likewise have nothing in common with each other besides the fact that by filing suit in this manner the Plaintiff avoids paying over 162 separate filing fees to the District Courts that are being improperly over-burdened with this type of mass copyright litigation.

19. From what I have researched, there are other cases that have addressed the issue of "improper joinder" like Judge Gibney (quoted above) including the West Virginia Federal Court which in response to a very similar set of facts said, "merely committing the same type of violation in the same way does not link defendants for purposes of joinder." *West Coast Productions v. Does 1-2010*, Case No.: 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010) quoting *LaFace Records v. Does 1-38*, 2008 WL 544992, *2(E.D.N.C. Feb 27, 2008). This is especially true where the only relief sought is the disclosure of the identifying information itself.

20. Just last month on October 5, 2011 Judge Gibney issued his well reasoned order of

dismissal (rendering all pending Motions to Quash Moot) in the US District Court for the Eastern District of Virginia case no.; 3:11-cv-00532- JAG, the Raw Films LTD Plaintiff who sued 32 John Does got a scathing Order of dismissal entered against it with potential sanctions being imposed on the Attorney for bad faith litigation tactics such as those that have likewise been engaged in in the instant case.

> In short, the plaintiff has failed to demonstrate any right to relief against the defendants arising out of the same transaction, occurrence, or series of transactions or occurrences. "Merely committing the same type of violation in the same way does not link the defendants together for the purposes of joinder." Laface Records, LLC v. Does 1-38, No.: 5:07-CV-298, 2008 U.S. Dist. LEXIS 14544 at *7(E.D.N.C. Feb. 27, 2008)

21. To cut court costs while suing as many individuals as possible, Plaintiff's counsel, John Steele (Steele Hansmeier PLLC) and/or Neil Rubin of RUBIN & BICKMAN PLLS is using improper joinder in this mass lawsuit alleging copyright infringement through BitTorrent.

22. Similar cases to this one have been dismissed, such as *CP Productions, Inc. v. Does 1-300 case 1:2010cv06255*, and in this case the court notes before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap - if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

23. Later, Judge Milton Shadur writes about Steele Hansmeier's abuse of the litigation system "in more than one way" with its "ill-considered" lawsuit:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come

> out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.
> *(CP Productions, Inc. v. Does 1-300 case 1:2010cv06255 (dismissed ALL John Doe defendants)*

24. In another Steele Hansmeier BitTorrent case in Illinois, Judge Harold A. Baker writes in denying the motion for expedited discovery:

> Plainly stated, the court is concerned that the expedited ex parte discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23. *VPR Internationale vs. Does 1-1017 case 2:2011cv02068*

25. In the Northern District of California, these nearly identical BitTorrent cases have been severed for improper joinder:

> *Pacific Century International LTD v. Does 1-101 case 4:2011cv02533 (severed does 2-101)*
> *IO Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)*
> *Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)*
> *New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)*

26. In yet another nearly identical BitTorrent case, filed in the Northern District of California by Steele Hansmeier, *Millennium TGA, Inc v. Does 1-21 case 3:2011cv02258*, Judge Samuel Conti found the same joinder problems, and wrote in his order denying request for leave to take early discovery, "This Court does not issue fishing licenses;"

27. In a recent order (6 Sep 2011) by Judge Bernard Zimmerman, Northern District of California, 5010 John Does were dismissed from *On The Cheap, LLC, v. Does 1-5011, case C10-4472 BZ*, due to improper joinder. Judge Zimmerman stated the following in his order:

> "This Court does not condone copyright infringement and encourages settlement of genuine disputes. However, Plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then to offer to settle with Doe defendants so they can avoid digging themselves out of the morass plaintiff is creating."

28. Plaintiff's joinder of 162 defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder of individuals has been disapproved by federal courts in both the RIAA cases and elsewhere. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants. *BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)* (severing lawsuit involving 203 defendants).

29. Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions. Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.Fed. R. Civ. P. 20.

30. Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met:

(1) the right to relief must be "asserted against them jointly, severally or in the alternative";

(2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; **and** (3) there must be a common question of fact or law common to all the defendants. *Id.*

31. Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-*

*11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

32. Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of the Internet to infringe a single work. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

33. Nor does the analysis change because the BitTorrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. Nearly all of the older protocols in the aforementioned cases work in this fashion. Kazaa, eDonkey and various Gnutella clients (e.g., LimeWire) have incorporated multisource/swarming downloads since 2002.[3]

34. Plaintiff claims all of the defendants are properly joined because they illegally downloaded/shared the same movie via BitTorrent. Plaintiff provided a listing of IP addresses of the defendants and a specific date/time (UTC), it was observed illegally

downloading/sharing the film. Plaintiff did not provide information on which IP addresses actually acted in concert. The nature of BitTorrent does not support Plaintiff's claim that All John Doe IP addresses acted together for the entire period of time. The "expert engineer" who gathered the data on the file sharing most likely did not observe all 162 doe defendants downloading the file at the same time, nor whether each of them in fact downloaded the entire set of torrent files.

35. The nature of BitTorrent is that the work in question is first made available to other BitTorrent users by a small number, usually one IP address. As other BitTorrent users join and start to download/share the work, the swarm grows. Depending on how popular the work is, the swarm can grow fast, or not at all. Eventually as the popularity of the shared work drops, the swarm shrinks, and eventually disappears. IP addresses commonly join and leave various BitTorrent swarms at all times during the life of the torrent. Plaintiff's agents who collected the data on John Doe IP addresses can verify the nature of BitTorrent, as well as provide details on who of the John Doe's IP addresses in this case truly shared the work between the other John Does IP addresses in this case.

36. In the January 2011 Technical Report: *An Estimate of Infringing Use of the Internet*, by *Envisional*[4] (a major company specializing in detecting and guarding against the threats of counterfeiting, piracy, fraud and online brand abuse), the following was noted for the single day analysis of BitTorrent use:

> For the 2.72 Million torrents identified, only .2% had 100 or more downloaders. 2.6% of the torrents had 10-99 downloaders. 51.9% of the torrents had from one to nine downloaders. 45.2% had no active downloads. Envisional also noted that a similar spread of "seeders" (users with a complete copy of the work) were associated with the torrents. For 48.5% of the torrents, there were no seeders connected. (Page 9)

37. This report clearly shows the vast majority of torrents only had zero to nine downloaders associated with them and a very limited number of file seeder at any one instance. It is highly unlikely that 162 BitTorrent downloaders and "seeders" are all connected at once.

38. The similar but separate nature of the BitTorrent connections is highlighted in three recently filed copyright infringement cases in Colorado (K-Beech Inc., v. John Doe, 1-11-cv-02370-PAB, K-Beech Inc., v. John Doe, 1-11-cv-02371-CMA, and K-Beech Inc., v. John Doe, 1-11-cv-02372-MSK) filed on 8 Sep 2011. Plaintiff's attorney in Colorado decided to file separate cases for each John Doe, as joinder of the three could not justified by location only.

39. Plaintiff has also improperly joined many IP addresses (Doe defendants) that do not reside within the jurisdiction of the court. Plaintiff conducted only a cursory collection of IP addresses and did not try to determine where the IP addresses are physically located. Even with their limited IP addresses analysis, Plaintiff should have been able to determine that many of the IP address were not within the court's jurisdiction. A simple freely available IP address geo-location Web site, such as www.ipligence.[illegible] should have been used to validate the proper jurisdiction for each IP address. Plaintiff knows that many of the Doe defendants do not reside within the court's jurisdiction, but they still improperly joined them together to obtain subscriber information from the ISPs. Many of the Courts that previously heard these types of mass copyright infringement cases have correctly named this activity as a "*Fishing Expedition*" for subscriber information. Plaintiff has no intention of naming any of the Doe defendants, much less bringing them to an actual trial after they obtain this information and settlement efforts fail. Plaintiff will use the subscriber information

obtained from the ISPs to send out settlement letters attempting to scare Doe defendants into paying to make the case go away, regardless of truly being guilty. The current state of mass copyright infringement cases in the US clearly shows this is the standard business model for these types of cases.

40. Discussions of the technical details of the BitTorrent protocol aside, the individual Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants. Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here.

41. There is also a first amendment protective legal test for the discovery of identity of persons who have communicated anonymously online. In *Sinclair v. TubesocktedD*, 596 F.Supp. 2d 128, 131-33 (D.D.C 2009), individuals who communicate anonymously online may be identified only if a plaintiff meets a multifactor test designed to balance the right to seek redress for legitimate claims against the fundamental right to communicate anonymously.

42. The Discovery the Plaintiffs are seeking in their dragnet approach to litigation violates the privacy rights of the ISP subscribers such as myself under Fla. Const. Art. I, Sec. 23 (Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein.) This should especially apply to foreign residents who have no contacts with the State of Florida and thus should not be subject to the Court's Jurisdiction in the first place.

43. In *Publix Supermarkets, Inc. v. Johnson*, 959 So.2d 1274 (Fla. 4th DCA 2007), the court recognized that names and addresses are types of identifying information that, may be protected by the right of privacy under the Florida Constitution:

> Article I, Section 23, Florida Constitution affords Floridians the right of privacy and ensures that each person has the right to "determine for themselves when, how and to what extent information about them is communicated to others." *Shaktman v. State*, 553 So.2d 148, 150 (Fla. 1989). Names, addresses, and telephone numbers are forms of identity information that can be considered private and confidential information See *Alterra Healthcare Corp. v. Estate of Francis Shelley*, 827 So.2d 936, 945 (Fla. 2002).

44. If a party requests private information, the court must determine whether the need for the information outweighs the interest in maintaining its confidentiality. Id. *Favalora v. Sidaway* 996, So.2d 895, 899 (Fla. 4th DCA, 2008).

45. Florida treats customer lists and specifically information about customers within a private company as confidential and subject to protection. *Benada Aluminum of Florida v. Rodriguez,* 712 So.2d 438 (Fla. 3rd DCA 1998).

46. As a non-resident, non-consenting "Doe" defendant I have a right to due process clause protections. The Florida Long Arm Statute has 2 conditions that must be met before it applies: 1. Jurisdiction must be authorized by the Florida Long Arm Statute; and 2. The exercise of personal jurisdiction must be consistent with constitutional due process limits. *Venetian Salami Co. Parthenais*, 554 So.2d 499 (Fla 1989); *Hartcourt Cos. V. Hogue*, 817 So.2d 1067 (Fla. 5th DCA 2002).

47. The Venetian Salami test is whether personal jurisdiction would comport with fair play and substantial justice. Nothing could be further from the truth in this case as it is the business model of the Plaintiff to get a favorable discovery ruling which can be applied to obtain private subscriber information from 325 ISP's and turn those addresses into demand letters in order to generate cash settlements from confused, frightened individuals. It is an abuse of the legal system nothing more and nothing less without a

scintilla of evidence to back up the outrageous claims of the complaint.

48. The Plaintiffs bear the burden of pleading specific facts sufficient to support the Court's exercise of personal jurisdiction over me. They must make a prima facia case for personal jurisdiction, not merely making assertions of naked legal conclusions or reciting jurisdiction requirements.

49. Here the Plaintiffs rely on leaps of logic supported by a flurry of technical terminology to exploit their conclusion that Dade County Florida is at the nucleus of the infringing activity. Nowhere do they specifically claim where the "seed files" that make up the torrent came to be on the internet in the first place, what if any copy protection methods if any the copyright holder employed to protect their copyrighted material, they claim that tracking software was installed and initiated on a US server – not that the server was in the State of Florida among other things.

50. If the real goal of the Plaintiffs is to litigate against purported infringers, they could no doubt do so in the federal forum where personal jurisdiction is proper, by using such technology to reach a prima facia conclusion of the subscriber's home district rather than lumping together hundreds of strangers from all over the nation in a jurisdiction they have no contacts with.

51. There is fundamental first amendment protections at stake here for anonymous speech on the internet and only a compelling government interest can overcome such First Amendment Rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a realistic chance of being successful. In these mass lawsuits, the pattern and practice is for the Plaintiffs to resort to the judicial system to violate the privacy rights of the subscribers and then resort to extra-judicial "self help" remedies such as extorting money from the

hapless victims of their dragnet approach, who are coerced into paying simply because it costs too much to defend the potential lawsuits that they threaten to file, but rarely do. In this particular case there is also the "name and shame" issue associated with being tied into a lawsuit from a porn peddler who probably seeded the file in the first place to increase their revenues which is a twisted sort of entrapment.

52. Even creditors seeking to collect on legitimate unpaid bills cannot threaten a lawsuit unless they intend to follow through on it and can be held liable in damages by the victims of such abusive collection practices that violate the fair debt collections practices act.

53. The Court needs to be mindful of the fact that once the defendant's right of anonymous expression is taken away it cannot be recovered, and this would have a chilling effect on legitimate first amendment rights. Some proof of wrongdoing with no innocent explanation should first be established before any relief is granted to the Plaintiffs which enables them to resort to writing demand letters threatening lawsuits if the person does not pay to make them go away.

54. The Court should apply the Dendrite standard requiring the Plaintiff to 1. Make reasonable efforts to notify the accused internet user of the pendency of the identification proceeding and explain how to present a defense; 2. Set forth the exact actions of each Doe defendant that constitute actionable cause; 3. Allege all elements of the cause of action and introduce prima facia evidence for each Doe defendant sufficient to survive a motion for summary judgment; and 4. Assuming the Court concludes that the plaintiff has presented a prima facia cause of action, the court must balance the defendant's first amendment right of anonymous free speech against the strength of the prima facia case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed. *Dendrite Int'l, Inc. v Doe No. 3* 775 A.2d 756

(N.J. App. 2001).

55. The course and conduct of the Plaintiffs in similar cases across the country reveal a pattern and practice of abusing the legal system to such a degree that it should be patently obvious to anyone who looks at the decisions coming out against the Plaintiffs that they are engaging in the most egregious conduct with the sole purpose of then engaging in self help remedies of sending out demand letters and constantly calling the John Does who they do get information on with threats of lawsuits that they have no intention of prosecuting. Indeed why would they since over 30 % of the John Does pay them off. The Plaintiffs and their attorneys have discovered a lucrative business model that relies on sympathetic Judges who without giving the matter a second thought grant the Motions for Early Discovery without giving the Doe defendants an opportunity to defend themselves from these frivolous "SPAM" lawsuits clogging up the Court's docket denying justice to legitimate cases where the Plaintiffs pay the individual filing fees.

WHEREFORE John Doe respectfully requests this Court to grant the instant motion for Protective Order and/or to Quash the Subpoena attached hereto, Motion to be Severed from the Case Pursuant to Rule 20, and Motion to Dismiss on the grounds that the suit (a) violates the Florida Constitution, (b) it lacks personal jurisdiction (c) there is improper joinder and (d) plaintiffs cannot meet the requirements of the First Amendment designed to protect anonymous speech.

I HEREBY CERTIFY that I have forwarded a copy of this Motion to the ISP - VERIZON at FAX #: **325-949-6916** on this 29th Day of November, 2011.

X John Doe

John Doe IP Address 71.122.251.152

PLEASE PRESS FIRMLY

# EXPRESS MAIL®

UNITED STATES POSTAL SERVICE

Legal Siz

1007

**For Domestic and International Use**

EI356823995US

...el Here:

PRESS HARD. *YOU ARE MAKING 3 COPIES.*

## ORIGIN (POSTAL SERVICE USE ONLY)

| | | |
|---|---|---|
| PO ZIP Code | Day of Delivery ☐ Next ☐ 2nd ☐ 2nd Del. Day | Postage $ |
| Date Accepted Mo. Day Year | Scheduled Date of Delivery Month Day | Return Receipt Fee $ |
| Time Accepted ☐ AM ☐ PM | Scheduled Time of Delivery ☐ Noon ☐ 3 PM | COD Fee $ / Insurance Fee $ |
| | Military ☐ 2nd Day ☐ 3rd Day | Total Postage & Fees $ |
| Flat Rate ☐ or Weight lbs. ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials |

**FROM:** (PLEASE PRINT) PHONE ( )

**FOR PICKUP OR TRACKING**

Visit **www.usps.com**

Call **1-800-222-1811**

EMS

EXPRESS MAIL

UNITED STATES POSTAL SERVICE®

**Addressee Copy**

Label 11-B, March 200-

**Post Office To Addressee**

## DELIVERY (POSTAL USE ONLY)

| | | |
|---|---|---|
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt Mo. Day | Time ☐ AM ☐ PM | Employee Signature |
| **Delivery Date** Mo. Day | Time ☐ AM ☐ PM | Employee Signature |

## CUSTOMER USE ONLY

[redacted]

☑ **WAIVER OF SIGNATURE** *(Domestic Mail Only)* Additional merchandise insurance is void if customer requests waiver of signature. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

**NO DELIVERY** ☐ Weekend ☐ Holiday

Mailer Signature

**TO:** (PLEASE PRINT) PHONE ( )

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

EP13L v3 1001-08 JULY 2009 © U.S. POSTAL SERVICE



